***********
Upon review of the competent evidence of record with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer at all times relevant to these proceedings, and is correctly named herein.
4. On March 26, 2009, Plaintiff alleges to have sustained injuries to her right knee, back, right shoulder, and both hands, which Defendants denied via a Form 61 dated November 4, 2009.
5. On March 26, 2009, Plaintiff alleges to have sustained injuries to her left knee and left shoulder, which Defendants accepted as compensable.
6. Plaintiff's average weekly wage was $220.83 at all times relevant to these proceedings, yielding a compensation rate of $147.23.
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Various documents, including:
 1. North Carolina Industrial Commission forms and filings;
 2. Discovery responses;
 3. Plaintiff's medical records;
 4. Defendant-Employer's wage and work schedule records for Plaintiff.
 *********** ISSUES
The issues to be determined are whether Plaintiff suffered an injury by accident on March 26, 2009 *Page 3 
to her knees, back, shoulders, and hands, and if so, to what workers' compensation benefits is she entitled?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 52 years old, with a date of birth of February 13, 1959. Plaintiff has a high school diploma, resides in the Greenville, North Carolina area with her husband and granddaughters, and has an employment history consisting of restaurant work, as well as working for Neil Medical Group, where she pulled packages to be shipped to different hospitals.
2. In October 2003, Plaintiff began working for Defendant-Employer as a kitchen manager. Prior to that time, Plaintiff worked with Ms. Jennifer Ann Shearin, Defendant-Employer's owner, at another restaurant. Ms. Shearin then hired Plaintiff when she began her own restaurant business.
3. Sometime between 7:30 p.m. and 7:45 p.m. on March 26, 2009, Plaintiff slipped and fell while walking out of the cooler at work. Plaintiff's right leg went backwards, her body fell forward, and she hit the cooler door with her left shoulder and the side of her face. Plaintiff then fell on her hands and knees, landing on mats that were on the floor. Mr. Daniel C. Accomando, one of Plaintiff's co-workers, helped her get up from the floor. Shortly after Plaintiff fell, she experienced pain in her knees, arms, back, and neck, and she also had a headache. Plaintiff left work approximately one hour after her fall and went home.
4. On the morning of March 27, 2009, Plaintiff went to the hospital and complained of continued bilateral knee pain as well as lower back pain radiating down her leg since her fall *Page 4 
at work on the previous day. Plaintiff received medications along with instructions to follow up with her primary care physician and to remain out of work. Plaintiff called Ms. Shearin to inform her of her hospital visit and treatment.
5. On April 2, 2009, Plaintiff presented to Ms. Denise Turnage, a family nurse practitioner with Carolina East Medical Associates in Washington, North Carolina. Plaintiff was continuing to experience pain in her knees, left shoulder, and lower back following her March 26, 2009 work injury. Ms. Turnage prescribed pain medications, administered a Toradol injection, recommended physical therapy, and restricted Plaintiff to light-duty work.
6. On or about April 9, 2009, Plaintiff returned to work for Defendant-Employer, but had difficulty performing her duties due to continued complaints of pain. According to Plaintiff, there were days following her initial return to work when she was unable to work at all due to her pain. As of the date of the hearing before the Deputy Commissioner, Plaintiff continued to experience pain in her knees, hands, shoulders, and back. The Full Commission finds Plaintiff's testimony concerning the degree and extent of her pain to be credible.
7. Although Defendants had not filed a Form 60 to admit the compensability of Plaintiff's March 26, 2009 work injury, they began authorizing payment of workers' compensation benefits, including medical treatment for Plaintiff's left knee and shoulder claims. On November 4, 2009, Defendants denied the compensability of Plaintiff's right knee, back, right shoulder, and bilateral hand claims via a Form 61, but continued to pay Plaintiff workers' compensation benefits for her left knee and shoulder injuries.
8. From May 8, 2009 through May 10, 2009, Plaintiff took a trip with her family to the mountains in Virginia. The purpose of this trip was to celebrate her grandmother's 101st
birthday. Plaintiff stayed in a cabin with her sister, Ms. Alatha Jackson Long, her niece, and her *Page 5 
two granddaughters. According to Plaintiff, she spent the majority of her trip visiting with her grandmother in a nearby nursing home and in the cabin.
9. Plaintiff denied participating in any activities such as hiking or fishing. She also denied falling, or otherwise injuring herself while on her mountain trip. Ms. Long corroborated Plaintiff's testimony regarding her activities on her mountain trip. The Full Commission finds the testimony of Ms. Long and Plaintiff to be credible.
10. According to Ms. Shearin, on May 11, 2009, Plaintiff telephoned her to inform her that she would have to miss work on that day because she fell and injured herself while on her recent mountain trip. Ms. Shearin testified that she memorialized the conversation on Plaintiff's wage records for that particular pay period in May 2009. Although the parties offered conflicting evidence regarding Plaintiff's activities during her May 2009 mountain trip, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff did not sustain an injury during this trip.
11. On May 19, 2009, Plaintiff returned to Ms. Turnage. Plaintiff continued to complain of pain in her left leg, back, right side, and left shoulder. Ms. Turnage recommended physical therapy, but when Plaintiff voiced concerns about her ability to complete the tasks associated with physical therapy, Ms. Turnage ordered a cervical spine MRI instead.
12. On July 2, 2009, Plaintiff returned to Carolina East Medical Associates and saw Dr. Maria Mitchell, a family medicine specialist. Plaintiff reported unimproved pain, as well as a new complaint of bilateral knee pain. Dr. Mitchell restricted Plaintiff to lifting no greater than 10 pounds. On July 15, 2009, Dr. Mitchell changed Plaintiff's restrictions to no lifting greater than five pounds, and noted that the cervical spine MRI revealed disc extrusions at the L5 and L6 levels of the spine. The Full Commission gives greater weight to the restrictions given by Dr. Mitchell. *Page 6 
13. In August 2009, Plaintiff began a work-hardening program. After two days of participation, Plaintiff reported that she was unable to complete the program. Plaintiff testified that she had to remain in bed for two weeks due to pain from participating in the work-hardening program.
14. On September 9, 2009, Plaintiff presented to Dr. Robert Albert Appert, an orthopaedist, with complaints of neck pain radiating into her left arm. Dr. Appert diagnosed Plaintiff with probable cervical disc disease. On September 24, 2009, Plaintiff complained of neck and back pain. Dr. Appert recommended a series of epidural steroid injections.
15. On September 11, 2009, Dr. Mitchell took Plaintiff out of work and has not released her to return to work in any capacity. Plaintiff continues to be treated by Dr. Mitchell for neck and left arm pain, headaches, bilateral knee pain, and back pain.
16. Plaintiff has a pre-existing history of hip, back, and shoulder problems. On October 31, 2000, Plaintiff injured her back in a motor vehicle accident and later received treatment from Dr. Scot Eric Reeg, an orthopaedist. Lumbar magnetic resonance imaging (MRI) revealed that Plaintiff had a right-sided herniated disc at the L5-S1 level of the spine. Dr. Reeg did not believe that Plaintiff was a surgical candidate, and allowed her to work with various modifications. On May 31, 2001, Dr. Reeg released Plaintiff with a five percent permanent partial disability rating to her back.
17. On August 17, 2005, Plaintiff underwent a decompressive lumbar laminotomy and a partial facetectomy and excision of a large, central disc herniation at the L5-S1 level of the spine performed by Dr. Reeg. Prior to this surgery, Plaintiff sought treatment several times for pain in her neck, shoulders, back, and legs. Plaintiff remained out of work between four and six *Page 7 
weeks following her August 17, 2005 surgery. Dr. Reeg then released her to return to work without restrictions in October 2005.
18. In August 2008, Plaintiff sustained injuries to her hip and shoulder due to a fall caused by her granddaughter running into her. Plaintiff went to the hospital, underwent x-rays, and received a diagnosis of right hip and shoulder pain. Plaintiff remained out of work for one week, and received instructions to follow up with her primary care physician on a regular basis following this incident.
19. With respect to Plaintiff's current injury, Dr. Appert opined that Plaintiff's cervical spine complaints were "probably" attributable to her March 26, 2009 work injury, and that Plaintiff's left shoulder pain was referred pain stemming from the neck/cervical spine. With respect to Plaintiff's lower back complaints, Dr. Appert was of the opinion that the "slip and fall and landing on — on your hands will generally not cause a lumbar disk to herniate. She really wasn't complaining of lumbar spine disease when I saw her. Fifty percent of people that have MRIs will have abnormal MRIs of the lumbar spine." Dr. Appert further opined that Plaintiff's prior surgery in 2005 was the cause of any continuing complaints Plaintiff had at the L5 level of the spine. Dr. Appert testified that there was nothing in his evaluation of Plaintiff that would have caused him to restrict her employment.
20. Dr. Mitchell opined that Plaintiff's March 26, 2009 work injury caused her cervical spine and left shoulder conditions and materially aggravated her pre-existing lower back condition. Dr. Mitchell further opined that there is a good chance that Plaintiff could return to suitable employment if she underwent treatment from a spine specialist. However, Dr. Mitchell has not released Plaintiff to return to work since he removed her from work on September 11, 2009 due to concerns that Plaintiff may fall again. *Page 8 
21. The Full Commission gives greater weight to the opinion testimony of Dr. Mitchell over any contrary opinions of Dr. Appert, as Dr. Mitchell has been treating Plaintiff over a longer period of time and is more familiar with her multiple problems.
22. The Full Commission finds, based upon the greater weight of the evidence that on March 26, 2009, Plaintiff sustained a compensable injury by accident to her cervical spine, left shoulder, and left knee.
23. The Full Commission further finds, based upon the greater weight of the evidence that as a direct and natural consequence of Plaintiff's March 26, 2009 work injury, she sustained a material aggravation of her pre-existing, non-disabling lower back condition.
24. Plaintiff failed to meet her burden of proving that her right knee, right shoulder, and bilateral hand conditions are direct and natural consequences of her March 26, 2009 work injury, or that such work injury either, caused, contributed to, or aggravated her right knee, right shoulder, and/or bilateral hand conditions.
25. Plaintiff is not at maximum medical improvement for her left shoulder, lower back, and cervical spine conditions. The medical treatment Plaintiff has received and continues to need with respect to her March 26, 2009 work injuries to her left shoulder, left knee, and cervical and lumbar spine conditions was medically necessary in order to effect a cure, to give relief, and/or to lessen her period of disability, and Defendants are obligated to pay for such treatment. Dr. Mitchell shall remain Plaintiff's authorized treating physician.
26. The Full Commission finds, based upon the greater weight of the evidence that Plaintiff has shown that she has been temporarily and totally disabled from employment from September 11, 2009 through the present and continuing due to her March 26, 2009 work injury. Dr. Mitchell took Plaintiff out of work on September 11, 2009 pending a medical evaluation and *Page 9 
treatment for her spinal injuries, and Dr. Mitchell has not released her to return to work in any capacity.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 26, 2009, Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment resulting in injury to her cervical spine, left shoulder, and left knee. N.C. Gen. Stat. §§ 97-2(6), 97-2(19).
2. As a direct and natural consequence of Plaintiff's March 26, 2009 work injury, she sustained a material aggravation of her pre-existing, non-disabling lower back condition. Such aggravation is compensable. Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983).
3. Plaintiff failed to meet her burden of proving that her right knee, right shoulder, and bilateral hand conditions are direct and natural consequences of her March 26, 2009 work injury, or that such work injury either caused, contributed to, or aggravated her right knee, right shoulder, and/or bilateral hand conditions.Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furniture,353 N.C. 227, 538 S.E.2d 912 (2000); Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983).
4. The medical treatment Plaintiff has received and continues to need due to her March 26, 2009 compensable injuries to her left shoulder, left knee, and cervical spine and for the material aggravation of her pre-existing, non-disabling lower back condition as a direct and natural consequence her work injuries, was reasonably and medically necessary in order to effect a cure, to give relief, and/or to lessen her period of disability. Defendants are obligated to pay for such treatment. Dr. Maria Mitchell shall remain Plaintiff's authorized treating physician. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
5. Plaintiff has proven by the greater weight of the medical and other evidence of record that as a result of her March 26, 2009 compensable injury, she has been temporarily and totally disabled from employment since September 11, 2009. Plaintiff is entitled to temporary total disability compensation from September 11, 2009 through the present and continuing, until further order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29; Russell v. LowesProd. Distrib.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Dr. Mitchell took Plaintiff out of work on September 11, 2009 and has not released her to return to work in any capacity. Additionally, Plaintiff has a five-pound lifting restriction and could not complete the work hardening program due to pain in August 2009.Id.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation at the rate of $147.23 per week from September 11, 2009 through the present and continuing until further Order of the North Carolina Industrial Commission. Defendants shall receive a credit for indemnity compensation already paid. Any accrued compensation shall be paid in a lump sum. 2. Defendants shall pay all medical expenses incurred or to be incurred in the future by Plaintiff as a result of her March 26, 2009 work injury for so long as such evaluations, examinations, and treatments may reasonably be required to effect *Page 10 
a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff is approved for Plaintiff's counsel, to be deducted and paid directly to Plaintiff's counsel from any accrued compensation due Plaintiff and thereafter by deducting and paying to Plaintiff's counsel every fourth compensation check.
4. Dr. Maria Mitchell shall remain Plaintiff's authorized treating physician.
5. Defendants shall pay the costs of these proceedings.
This the ___ day of April 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1